Max Bloom, J.
Petitioner, a local school board, brings this article 78 proceeding to enjoin the Board of Education from proceeding further with the rezoning of Community School District No. 8 and from proceeding with elections for members of Community School Boards.
By chapter 330 of the Laws of 1969 (Education Law, art. 52-A), the Legislature mandated the decentralization of the New York City elementary, intermediate and junior high school system. The law provides that there shall be no less than 30 nor more than 33 community districts which shall contain an average daily attendance of not less than 20,000 pupils (Education Law, § 2590-b, subd. 2, par. [b]). The criteria for division into community districts are set forth in detail (Education Law, § 2590-b, subd. 3). Under section 2590-b (subd. 2, par. [c]), the board was required to publish a tentative districting plan on or before November 17, 1969. Public hearings were required to be held thereon between December 1 and December 12, 1969, with the final districting plan published not later than December 22,1969. As amended by chapter 3 of the Laws of 1970, election of Community School Boards shall be held on the third Thursday in March.
Pursuant to the requirements of law the Board of Education on November 17,1969 published its “ Proposed Plan for a Community School District System In New York City ”. A public hearing was held thereon on December 9, 1969 at William Howard Taft High School.
The board’s proposed plan provided for substantial alterations in the then existing local school board districts. A new district was created. This necessitated substantial movement of schools from one existing district to another and created the possibility of future changes in feeder patterns for junior high and intermediate schools.
The proposed changes so stirred community sentiment in The Bronx that very considerable opposition was manifested at the public meeting of December 9. At the close of that meeting Mr. Monserrat, President of the Board of Education, announced that district lines would remain substantially as they then existed.
On December 18, 1969, the board convened a meeting of local school boards and District Superintendents. Included on the agenda was a discussion of the transfer of Public School No. 48 *160 from District 7 to District 8. Apparently, the basis for the proposed change lay in the fact that a majority of the graduates of Public School No. 48 feed into Junior High School No. 125, which is in District 8.
Subsequently, on December 22, 1969, the board, in accordance with the requirement of section 2590-b (subd. 2, par. [c]) promulgated its “District Boundary Lines Under The Community School District System ”. The only change in the allocation of schools among the Bronx community districts was the transfer of Public School 48 from District 7 to District 8. More importantly, however, the board, in laying out the boundaries of District 8, provided that the district consisted of two noncontiguous areas, in violation of section 2590-b (subd. 3, par. [a], cl. [ii]) of the Education Law. To remedy this defect the board called a conference of the districts involved on January 26,1970. Although the representatives of District 8 appeared at this meeting, they withdrew before it began. The result of the meeting was the allocation of a three- or four-block bridge to District 8, connecting the hitherto noncontiguous areas.
Officially, the contentions of District 8 are two in number. First, they contend that the transfer of Public School 48 from District 7 to District 8 would affect the ethnic balance now prevailing in the district. It would be sufficient to point out that the change in ethnic ratio by reason of the transfer is minimal. Of greater significance, however, is the fact that the requirement for heterogeneity of pupil population laid down in section 2590-b (subd. 3, par. [a], cl. [iv]) was intended to facilitate integration. It is no answer to the segregated school to argue that the district is integrated. Indeed, the inclusion of a segregated elementary school in an integrated district may, through the infusion of those students into integrated junior high and intermediate schools, help in the ultimate integration of these students into the school system.
Secondly, District 8 argues that since the Education Law (§ 2590-b, subd. 2, par. [f]), authorizes the board to redistrict only once in any odd numbered year, the board’s action in January 1970 which created the bridge to connect the two non-contiguous sections of the district was beyond its power. The short answer to this contention is that unless the correction is permitted we will be confronted with a school district obviously in violation of the law. To obviate this possibility the court will utilize its broad and beneficent equity power to permit the correction of an obvious mistake.
Not contained in the papers, but patently the cause for the controversy, is the fact, stressed upon the argument, that cer *161 tain “ corrections ” in the district’s lines, to conform them to school zones, “ gerrymandered ” the chairman of the local school board out of the Community District, thus rendering her ineligible to be a candidate for the Community School Board. It may be that, in transferring this small area which included the chairman’s residence, from District 8 to District 12, the board showed singular insensitivity to the wishes of the residents of District 8. However, the endeavor to conform school zones with community district lines has basis in reason. Hence, it cannot be said that the board’s action was arbitrary or capricious.
Accordingly, the application must be denied.